UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) ) | Crim. Action No. 21-0127 (ABJ) |
| JOSHUA MATTHEW BLACK, | ) ) ) | |
| Defendant. | ) ) | |

## ORDER

On April 28, 2022, defendant filed a motion asking this Court to dismiss Count One of the indictment. Def.'s Mot. to Dismiss Count One of the Ind. [Dkt. # 49] ("Mot.") at 1. The government opposes the motion. United States' Opp. to Mot. [Dkt. # 50] ("Opp."). For the following reasons, the motion is **DENIED**.

## BACKGROUND

Defendant is charged in an eight-count indictment with offenses arising out of his presence at the U.S. Capitol on January 6, 2021:

(1) Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2;

(2) Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A);

(3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and 1752(b)(1)(A);

(4) Impeding Ingress and Egress in a Restricted Building or Grounds with a Deadly or Dangerous Weapon and Aiding and Abetting, in violation of 18 U.S.C. §§ 1752(a)(3), 1752(b)(1)(A) and 2;

1

 (5) Unlawful Possession of a Dangerous Weapon on Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(1)(A);

 (6) Entering and Remaining on the Floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A);

 (7) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and

 (8) Impeding Passage through the Capitol Grounds or Buildings and Aiding and Abetting, in violation of 40 U.S.C. §§ 5104(e)(2)(E) and 2.

Ind. [Dkt. # 9] at 2–4.

  The government's opposition describes the allegations in detail, and the Court has already addressed the facts of this case in its April 22, 2021 ruling on the record on defendant's bond review motion. *See* Min. Entry (April 22, 2021). For purposes of this motion, it is sufficient to say that the government alleges that defendant "traveled from Leeds, Alabama, to attend the 'Stop the Steal' rally" and made his way to the Capitol. Opp. at 3. As he put it in the YouTube video he posted later, "[o]nce we found out Pence turned on us and that they had stolen the election, like officially, the crowd went crazy. I mean, it became a mob. We crossed the gate. . . . We just wanted to get inside the building." United States' Opp. to Def.'s Mot. to Recons. and Vacate Order of Deten. [Dkt. # 20] ("Bond Opp.") at 7–8, 16.

  Defendant "initially positioned himself at the front of the large crowd that had gathered at the West Front of the Capitol grounds," and was struck in the left cheek when police officers deployed non-lethal munitions to control the growing crowd. Opp. at 3. Thereafter, defendant "proceeded to the East Front of the Capitol," where he was part of another large and angry crowd pressing against the line of officers attempting to defend the East Rotunda doors behind them. *Id.* As depicted in the videos provided to the Court at the time of the bond hearing, defendant was at the front of the crowd, and he participated in the "heave-ho" motion aimed at dislodging the

officers. *Id.* Eventually, the doors were breached. As he explained on YouTube, "We just wanted to get inside the building. **I wanted to get inside the building** so I could plead the blood of Jesus over it. That was my goal." Bond Opp. at 8 (emphasis added). In a later interview with the Federal Bureau of Investigation ("FBI"), defendant said: "I just wanted to show the politicians that we the people run this country, you don't. You know, you swore an oath to defend the Constitution and you didn't do it. You know, you're a bunch of lying crooks, Democrat and Republicans." *Id.* at 11. "I wanted them to know that we the people can do it if we decide, you know?" *Id.* "And there were no lead bullets flying from us. But, you know, we had the numbers and the power at the moment to show them that you don't run this country. We do." *Id.*

Black crossed the threshold of the Capitol at approximately 2:40 p.m. along with many others. Opp. at 3–4. He walked through corridors leading to the Senate Chamber and entered the Senate Floor, where he remained for over 20 minutes. *Id.* at 4. Video footage from within the chamber shows defendant rummaging through papers on a Senator's desk, taking pictures of documents and of himself, but also requesting that other people not disrespect the Senate. *Id.*; Bond Opp. at 7. Black was asked by Capitol Police to leave the Senate Chamber at least twice before he did so at approximately 3:09 p.m. Opp. at 4. He then left the Capitol through the Senate Carriage Door at approximately 3:10 p.m. *Id.* "Following January 6, Black admitted participating in the riot in a video testimonial he posted to YouTube and in two voluntary interviews" with the FBI. *Id.* He admitted he was carrying a knife when he entered the building. *Id.*

Defendant has moved to dismiss Count One, which alleges:

> On or about January 6, 2021, within the District of Columbia and elsewhere, JOSHUA BLACK, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and engaging in disorderly and disruptive conduct.

Ind. at 2.  He contends that:

> (1) . . . the January 6, 2021 Congressional proceeding to certify the 2020 Presidential election was not an "official proceeding" as contemplated by §1512(c)(2); (2) that §1512(c)(2) cannot be viewed as independent crime but, rather, is a residual clause tethered to, and a catchall for, §1512(c)(1) which addresses prohibited conduct as such conduct relates to documents, records and other things which are relevant to the obstruction of an official proceeding; and, (3) that the mens rea element of §1512(c) which requires that the prohibited act be undertaken corruptly is unconstitutionally vague.

Mot. at 3–4 (emphasis omitted).

## LEGAL STANDARD

The Federal Rules of Criminal Procedure require that an indictment must consist of "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  The charging document "need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018), quoting *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014); *see United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974), quoting *United States v. Carll*, 105 U.S. 611, 612 (1882).

A criminal defendant may move to dismiss an indictment before trial based on a "defect in the indictment," Fed. R. Crim. P. 12(b)(3)(B), including constitutional challenges.  *See United States v. Eshetu*, 863 F.3d 946, 952 (D.C. Cir. 2017), *vacated in part on reh'g on other grounds*, 898 F.3d 36 (D.C. Cir. 2018).  "When considering a motion to dismiss an indictment, a court

assumes the truth of those factual allegations." *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015), citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952). A dismissal of an indictment "is granted only in unusual circumstances," because "a court's 'use[ ] [of] its supervisory power to dismiss an indictment . . . directly encroaches upon the fundamental role of the grand jury.'" *Id.* at 148, quoting *Whitehouse v. U.S. Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995).

## ANALYSIS

This motion is not the first one to challenge whether January 6 indictments charging defendants under section 1512(c)(2) are deficient. This Court has already addressed each of the legal issues raised here, *see generally United States v. Williams*, No. 21-cr-618, 2022 WL 2237301 (D.D.C. June 22, 2022), and, as noted in that opinion, similar challenges have been rejected by every court in this district to consider them – with one exception. *See United States v. Sandlin*, No. 21-cr-88, 2021 WL 5865006, at *3–5, *10–13 (D.D.C. Dec. 10, 2021); *United States v. Caldwell*, No. 21-cr-28, 2021 WL 6062718, at *4–11 (D.D.C. Dec. 20, 2021); *United States v. Mostofsky*, No. 21-cr-138, 2021 WL 6049891, at *9–11 (D.D.C. Dec. 21, 2021); *United States v. Montgomery*, No. 21-cr-46, 2021 WL 6134591, at *4–10, *18–23 (D.D.C. Dec. 28, 2021); *United States v. Nordean*, No. 21-cr-175, 2021 WL 6134595, at *4–12, *14–19 (D.D.C. Dec. 28, 2021); Order, *United States v. Reffitt*, No. 21-cr-32 (D.D.C. Dec. 29, 2021) [Dkt. # 81]; *United States v. McHugh*, No. 21-cr-453, 2022 WL 296304, at *4–12, *22 (D.D.C. Feb. 1, 2022); *United States v. Grider*, No. 21-cr-22, 2022 WL 392307, at *3–8 (D.D.C. Feb. 9, 2022); *United States v. Bozell*, No. 21-cr-216, 2022 WL 474144, at *1–7 (D.D.C. Feb. 16, 2022); *United States v. Robertson*, No. 21-cr-34, 2022 WL 969546, at *3–6 (D.D.C. Feb. 25, 2022); *United States v. Andries*, No. 21-cr-93, 2022 WL 768684, at *3–12 (D.D.C. Mar. 14, 2022); *United States v. Puma*, No. 21-cr-454,

2022 WL 823079, at *4–14 (D.D.C. Mar. 19, 2022); *United States v. McHugh*, No. 21-cr-453, 2022 WL 1302880, at *2–12 (D.D.C. May 2, 2022) ("*McHugh II*"); *United States v. Bingert*, No. 21-cr-91, 2022 WL 1659163, at *3–11 (D.D.C. May 25, 2022); *United States v. Fitzsimons*, No. 21-cr-158, 2022 WL 1698063, at *3–13 (D.D.C. May 26, 2022). In *United States v. Miller*, No. 21-cr-119, 2022 WL 823070 (D.D.C. Mar. 7, 2022), the court rejected defendant's arguments with respect to the "official proceeding" issue, but it did interpret the clause of section 1512 at issue here – section 1512(c)(2) – to require the dismissal of the charge. *See generally id.*

I. **Official Proceeding**

Defendant first asserts that "the January 6, 2021 Congressional proceeding to certify the 2020 Presidential election was not an 'official proceeding' as contemplated by § 1512(c)(2)." Mot. at 3 (emphasis omitted). On that basis, he maintains that his actions as part of the crowd that entered the Capitol on January 6, 2021, interrupting the joint session to certify the Electoral College vote, would fall outside of the scope of the statute.[1]

18 U.S.C. § 1512(c)(2) states: "Whoever corruptly . . . (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." The scope of the term "official proceeding" is not left to the reader's imagination, but it is specifically defined in the statute to include:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) a proceeding before the Congress;

---

[1] Defendant does not expand on his "official proceeding" argument other than to adopt the arguments made in the *Miller* case. Mot. at 3. But the Court in *Miller* agreed that "as used in § 1512, 'official proceeding' is a defined term, and its definition covers the Congressional certification of Electoral College results." 2022 WL 823070, at *5.

>> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce.

18 U.S.C. § 1515(a)(1).

The joint session to certify the vote of the Electoral College falls squarely within that definition; a "proceeding before the Congress" is specifically included. Moreover, when one reads those words in the context of the other "official proceedings" specified in the list – "a proceeding before a judge or court . . . or a Federal grand jury," "a proceeding before a Federal Government agency which is authorized by law," and "a proceeding . . . before any insurance regulatory official or agency," 18 U.S.C. § 1515(a)(1) – the term appears to apply to a formal gathering before the body in question, *see United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013), which is conducted under legal auspices, and is authorized to render some sort of decision or outcome.

One would be hard-pressed to identify many other proceedings on Capitol Hill with more formality than a joint session of both houses of Congress that is called for by the Constitution itself, and over which the Vice President of the United States is required to preside. *See* U.S. Const. art. II, § 1; U.S. Const. amend. XII. This was not merely a ceremonial gathering, as one might describe a State of the Union address, but it fits the definition of a proceeding "before the Congress" because a quorum consisting of "a Member or Members from two thirds of the

States, and a Majority of all the States" was required to be there, U.S. Const. art. II, § 1, cl. 3, and there was something specific to be determined: the outcome of the presidential election.[2]

One can also find meaning in the repetition of the word "before" in section 1515(a)(1). The court in *McHugh* found that the certification proceeding meets the definition of an official proceeding as it involves one entity appearing "before" another. 2022 WL 296304, at *6 ("Fifty-three sections of the U.S. Code use the phrase 'a proceeding before,' and in every one the phrase describes a proceeding involving more than one entity, usually in a court-like setting where one entity 'appears before' another."). And here, the Electoral College can be identified as the second party. Although not physically present, the Electoral College must "vote by ballot for President and Vice-President" and "transmit [the results] sealed to the seat of the government of the United States, directed to the President of the Senate." U.S. Const. amend. XII. Congress must then formally convene to open, debate, and certify those results. *Id.*; 3 U.S.C. § 15. The votes themselves are therefore "before" Congress. *See Sandlin*, 2021 WL 5865006, at *4; *McHugh*, 2022 WL 296304, at *7; *Montgomery*, 2021 WL 6134591, at *10.

Second, the provision of the criminal code at issue is extremely broad. In section 1512(c)(2), Congress provided that one who corruptly obstructs "*any* official proceeding" is subject to punishment, 18 U.S.C. § 1512(c)(2) (emphasis added), and the Supreme Court has explained that "[r]ead naturally, the word 'any' has an expansive meaning . . . ." *United States v.*

---

2   Federal law specifies how members of Congress may challenge an electoral vote. "Upon such reading of any such [electoral] certificate or paper, the President of the Senate shall call for objections, if any. Every objection shall be made in writing, and shall state clearly and concisely, and without argument, the ground thereof, and shall be signed by at least one Senator and one Member of the House of Representatives." 3 U.S.C. § 15. There are also procedures for each house to follow when debating and voting on an objection. *See* 3 U.S.C. § 17.

*Gonzales*, 520 U.S. 1, 5 (1997); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008); *Montgomery*, 2021 WL 6134591, at *4.  Since Congress chose to use the word "any" in this provision, the Court should not presume to impose a limitation not found in the statute, as that would serve "to alter, rather than to interpret" the statutory language.  *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020).  This is particularly true when one takes note of the fact that Congress used "any" in section 1512(c)(2), while selecting the articles "an" or "the" for other portions of section 1512.  *See, e.g.*, 18 U.S.C. §§ 1512(a)(1)(A)–(B), (a)(2)(A)–(B), (b)(1)–(2), (c)(1), (d)(1), (f)(1), (g)(1), (i).  For all of these reasons, the plain language of the statute supports the government's interpretation, and the Court will not dismiss Count One on this ground.

## II.     "Otherwise"

Section 1512(c) reaches anyone who corruptly –

> (1) alters, destroys, mutilates, or conceals a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) *otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so . . . ."

18 U.S.C. § 1512(c).  Defendant argues that "an alleged violation of §1512(c)(2) cannot be viewed as an independent substantive offense but, rather, must be viewed as a residual clause of the statute which is tethered to, and operates as a catchall for, §1512(c)(1)." Mot. at 7.  Defendant's motion rests upon the *Miller* decision and asks this Court to adopt it.  *Id.*

In *United States v. Miller*, the court found that "there are two plausible interpretations of [18 U.S.C. § 1512(c)(2)]: either § 1512(c)(1) merely includes examples of conduct that violates § 1512(c)(2), or § 1512(c)(1) limits the scope of § 1512(c)(2)." 2022 WL 823070, at *15.  The more

plausible interpretation, the court reasoned, is the latter, and therefore it found that the indictment failed to allege a violation of 18 U.S.C. § 1512(c)(2). *Id.*; *see also United States v. Fischer*, No. 21-cr-234, 2022 WL 782413, at *4 (D.D.C. Mar. 15, 2022) ("The Court recently concluded [in *Miller*] that the word 'otherwise' links subsection (c)(1) with subsection (c)(2) in that subsection (c)(2) is best read as a catchall for the prohibitions delineated in subsection (c)(1).").

The *Miller* court relied heavily on *Begay v. United States*, 553 U.S. 137 (2008), *abrogated on other grounds by Johnson*, 576 U.S. 591 (2015), and *Yates v. United States*, 574 U.S. 528 (2015) (plurality opinion). In *Begay*, the Supreme Court considered whether drunk driving was a "violent felony" for the purposes of the sentencing provision imposing a mandatory minimum term on an offender with three prior convictions "for a violent felony," as that term was defined in 18 U.S.C. § 924(e)(2)(B)(ii) ("the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that-- . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another"). The Court concluded that the examples listed before "otherwise" limited the scope of the residual clause to similar crimes, and that drunk driving fell "outside the scope" of the ACCA. *Begay*, 553 U.S. at 142–48.

The *Miller* court reasoned that, because "the *Begay* majority opinion rejected the government's argument 'that the word 'otherwise' is *sufficient* to demonstrate that the examples [preceding 'otherwise'] do not limit the scope of the clause [following 'otherwise'],'" 2022 WL 823070, at *9 (alterations and emphasis in original), section 1512(c)(1) most likely also limits the scope of section 1512(c)(2). *Id.* at *9–11.

This Court respectfully disagrees with *Miller's* reasoning, and along with other courts in the district, declines to follow it. The Court is not basing its determination on a finding that the

10

mere appearance of the word "otherwise" is sufficient to answer the question and establish that the first clause, section 1512(c)(1), was not meant to serve as a limit on the second clause, section 1512(c)(2). Rather, considering the language and structure of the statute, it agrees with the reasoning in the other decisions in this district denying motions to dismiss section 1512(c)(2) counts and rejecting the *Miller* court's application of *Begay*. *See McHugh II*, 2022 WL 1302880, at *5–6; *Bingert*, 2022 WL 1659163, at *8.

For one thing, the structure of section 1512(c)(2) does not parallel the structure of the ACCA, and "otherwise" in section 1512(c)(2) does not immediately follow a list of examples. And sections 1512(c)(1) and (c)(2) – which prohibit different types of conduct – do not overlap in the same way that the ACCA clauses overlapped, rendering a conclusion that what follows the term "otherwise" is an extension of the prior provision less likely. *Compare* 18 U.S.C. § 1512(c), *with* 18 U.S.C. § 924(e)(2)(B). Indeed, the Supreme Court noted in *Begay* that "the word 'otherwise' *can* (we do not say *must* . . .) refer to a crime that is similar to the listed examples in some respects but different in others . . . ." *Begay*, 553 U.S. at 144 (emphasis in original).

As the court observed in *McHugh II*, the way Congress drafted the two provisions indicates that they were intended to target different conduct:

> Rather than a continuous list with a general term at the end, § 1512(c) contains two separately numbered paragraphs, with a semicolon and a line break separating the "otherwise" clause in paragraph (c)(2) from the preceding terms in paragraph (c)(1). Furthermore, paragraph (c)(2) is grammatically distinct from paragraph (c)(1). Although the two provisions share a subject and adverb ("whoever corruptly"), paragraph (c)(2) contains an independent list of verbs that take a different object ("any official proceeding") from the verbs in paragraph (c)(1) (which take the object "a document, record, or other object"). . . . In short, rather than "A, B, C, or otherwise D," section 1512(c) follows the form "(1) A, B, C, or D; or (2) otherwise E, F, or G."

2022 WL 1302880, at *5.

As for *Miller*'s finding that "[r]eading § 1512(c)(2) alone is linguistically awkward," 2022 WL 823070, at *6, this is not the case if "otherwise" is read to "'signal[] a shift in emphasis' . . . from actions directed at evidence to actions directed at the official proceeding itself." *Montgomery*, 2021 WL 6134591, at *12, quoting *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 520 (2015).  This is also not the case if "otherwise" is taken to mean "in a different way."  *See McHugh II*, 2022 WL 1302880, at *4.  Under either interpretation, the meaning of the statute is clear:  a person can violate section 1512(c)(2) through means that differ from document destruction, and the term "otherwise" does not limit the prohibition in section 1512(c)(2) to conduct described in section 1512(c)(1).  As a result, the Court will not dismiss the indictment under defendant's residual clause theory.

### III.    Vagueness

The motion to dismiss also argues that the requirement that "the prohibited conduct be carried out *corruptly* is unconstitutionally vague."  Mot. at 6 (emphasis in original).  The statute penalizes "corruptly . . . obstruct[ing], influenc[ing], or imped[ing] any official proceeding, or attempt[ing] to do so."  18 U.S.C. § 1512(c)(2).  Defendant argues that corruptly is "the *mens rea* component of § 1512," and that the term does not "give fair warning" of what conduct would violate the statute – and the D.C. Circuit has already "noted that the term 'corruptly' itself is vague."  Mot. at 6, citing *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991).

A law can be unconstitutionally vague if "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement."  *Johnson v. United States*, 576 U.S. 591, 595 (2015).

With respect to fair notice, "a statutory term is not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'"  *United States*

*v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017), quoting *Roth v. United States*, 354 U.S. 476, 491 (1957). "Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning 'specifie[s]' 'no standard of conduct . . . at all.'" *Bronstein*, 849 F.3d at 1107, quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (alterations in original). "Accordingly, when the vagueness doctrine assesses a legal term's meaning to ordinary people, it is assessing meaning with the elementary rule of statutory interpretation: [w]ords receive their plain, obvious and common sense meaning, unless context furnishes some ground to control, qualify, or enlarge it." *Bronstein*, 849 F.3d at 1108 (citation and quotation marks omitted).

As to the second aspect of the vagueness doctrine, the Supreme Court has explained that if the applicability of a statute depends upon "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings," courts may find the statute to be unconstitutionally vague on the grounds that it encourages arbitrary and discriminatory enforcement. *United States v. Williams*, 553 U.S. 285, 306 (2008).

Defendant is correct that the D.C. Circuit found the word "corruptly" to be vague in a different statute: 18 U.S.C. § 1505. *See Poindexter*, 951 F.2d at 378. But the ruling in *Poindexter* was addressed to the meaning of the word as applied in its unique factual scenario, and it is not controlling here.

In *Poindexter*, the former National Security Advisor John Poindexter was convicted on five felony counts arising out of his role in the Iran/Contra Affair, including a conviction for violating 18 U.S.C. § 1505. The Iran/Contra Affair involved national security officials in the Reagan Administration who were secretly involved in facilitating the sale of arms to the Islamic Republic of Iran – which was subject to an embargo – and supporting the Contras in their attempt to overthrow the Sandinista government in Nicaragua – which was specifically prohibited by statute.

*Poindexter*, 951 F.2d at 371–72. Poindexter was compelled to provide congressional testimony concerning his role in the events. *Id.* at 372. He was subsequently charged with corruptly obstructing Congress's inquiry by making false statements, participating in the preparation of a false chronology, and deleting information about the arms shipment from his computer. *Id.*

18 U.S.C. § 1505 provides:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede . . . the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress . . . Shall be fined [or] imprisoned not more than 5 years . . . or both.

Poindexter challenged his § 1505 convictions on the grounds that "use of the term 'corruptly' renders the statute unconstitutionally vague as applied to this conduct." *Poindexter*, 951 F.2d at 377. Although the court acknowledged that, "on its face, the word 'corruptly' is vague," *id.* at 378, it did "not conclude that the ambiguity of the term 'corruptly' in § 1505 renders that term unconstitutionally vague as applied to all conduct." *Id.* at 385. Rather, the court concluded that the term "corruptly" was too vague "as used in § 1505 . . . to provide constitutionally adequate notice that it prohibits lying to the Congress." *Id.* at 379.[3]

As the district court in *Sandlin* observed, "[c]ourts have since cabined *Poindexter*'s holding to its facts and have not read it 'as a broad indictment of the use of the word 'corruptly' in the various obstruction-of-justice statutes.'" *Sandlin*, 2021 WL 5865006, at *11, quoting *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998); *see also McHugh*, 2022 WL 296304, at

---

3   After *Poindexter,* the D.C. Circuit considered another challenge to the term as it appears in 18 U.S.C. § 1512(b), and it found that "corruptly" was not vague as applied to the defendant's attempts to "corrupt" another person "by exhorting her to violate her legal duty to testify truthfully in court." *United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996).

14

\*10; *Montgomery*, 2021 WL 6134591, at \*18–19; *Caldwell*, 2021 WL 6062718, at \*8–11; *Bozell*, 2022 WL 474144, at \*6; *Nordean*, 2021 WL 6134595, at \*10; *Mostofsky*, 2021 WL 6049891, at \*11; *see also United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017) (finding that discussion of the term "corruptly" in *Poindexter* "does not undermine [defendant's] convictions" under 18 U.S.C. § 1512(b)(3)).

The Supreme Court's decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) has more bearing on the instant motion. In that case, the Supreme Court examined the meaning of 18 U.S.C. § 1512(b)(2)(A) and (B), which make it a crime to "'knowingly . . . corruptly persuad[e] another person . . . with intent to . . . cause' that person to 'withhold' documents from, or 'alter' documents for use in, an 'official proceeding.'" *Arthur Andersen LLP*, 544 U.S. at 698 (alterations in original). It found that the "natural meaning" of "corruptly" was "clear": the term is "normally associated with wrongful, immoral, depraved, or evil" conduct. *Id.* at 705. While the *Arthur Andersen* case did not consider the meaning of the term within the specific context of section 1512(c)(2), several circuits have since relied on the decision to conclude that "corruptly," as used in section 1512(c), requires showing "dishonesty," an "improper purpose," or that defendant acted "wrongfully." *See United States v. Farrell*, 921 F.3d 116, 141 (4th Cir. 2019) (as applies to section 1512(c)(2), "[t]o act 'corruptly' means to act wrongfully"); *United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007) (upholding jury instructions defining "corruptly" to "mean[] that the defendant acted with the purpose of wrongfully impeding the due administration of justice"); *see also United States v. Delgado*, 984 F.3d 435, 452 (5th Cir. 2021) ("[A] person acts 'corruptly' under [18 U.S.C. § 1512(c)(2)] when they act 'knowingly and dishonestly, with specific intent to subvert or undermine the due administration of justice.'"); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) ("Acting 'corruptly' within the

meaning of § 1512(c)(2) means acting 'with an improper purpose and to engage in conduct knowingly and dishonestly with the specific intent to subvert, impede or obstruct the [proceeding].''), quoting *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011).

The D.C. Circuit has not yet addressed the constitutionality of the word "corruptly" in the context of section 1512(c). Given *Arthur Andersen* and the instructive decisions set forth above, the Court agrees with the determinations of the other courts in the district that the inclusion of the term does not render the statute unconstitutionally vague. *See, e.g.*, *Sandlin*, 2021 WL 5865006, at *13 (because the indictment alleged that the defendants used "obvious criminal means with the intent to obstruct an official proceeding, their conduct falls squarely within the core coverage of 'corruptly' as used in § 1512(c)(2)"). The Court will provide jurors with instructions as to the meaning of the term "corruptly." *See id.* And depending on the facts introduced at trial, the defendant may have a valid argument at the close of the government's case that the evidence was insufficient to establish the necessary element of a corrupt purpose. At this juncture, though, predictions about the state of the record at that time are not a basis to dismiss the indictment on its face. *See McHugh*, 2022 WL 296304, at *3 ("In deciding a motion to dismiss an indictment, the question before the Court is a narrow one, and the court will neither review the sufficiency of the evidence against the defendant nor craft jury instructions on the elements of the crimes charged.") (brackets and citations omitted).

## CONCLUSION

Defendant's motion to dismiss is **DENIED**.

AMY BERMAN JACKSON
United States District Judge

DATE: July 26, 2022