UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 21-CR-127 (ABJ) |
| | : | |
| JOSHUA BLACK, | : | |
| | : | |
| *Defendant.* | : | |

## UNITED STATES' RESPONSE TO COURT'S MINUTE ORDER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Response to the Court's January 12, 2023, Minute Order. This order directed the parties to file supplemental briefs on the issue whether the knife in this case, "which may be used as a tool in certain trades or hobbies, qualifies as 'inherently or obviously dangerous or deadly' for purposes of the definition of a 'deadly or dangerous weapon' applicable to Counts Two and Three" of the Superseding Indictment.

### A. Background

During the trial, the government admitted Exhibit 200, a knife Joshua Black carried throughout his time on the Capitol grounds and inside the Capitol on January 6, 2021. The government also admitted this admission from a statement Black made on YouTube:

> [T[hey brought me behind the [police] lines. And they had me by – they said, "Make sure we can see your hands" – so I had my hands up there. Actually, I had a knife on me. But they never – I had too much clothes on. It was freezing out there, you know? So I never – I wasn't planning on pulling – I just carried a knife 'cause I do. I work outside and you – you need knives, you know? I just – I don't – you're not allowed to carry guns in D.C. and I don't like being defenseless.

(Govt. Trial Ex. 1.C.1.) Evidence also established that Black carried the knife, which was inside a scabbard or holster, on his right hip. (Govt. Trial Ex. 101.C.1.)

B. <u>**Argument**</u>

1. <u>**Introduction**</u>

The parties have agreed, and the Court issued instructions, that whether the knife Black carried to and through the Capitol on January 6, 2021, was a "deadly or dangerous weapon" depends on the facts of the particular case. It is for the factfinder to decide, on the facts of this case, whether the knife allegedly carried by the defendant was, in fact, a deadly or dangerous weapon. Dkt. 70, at 8. The factfinder may decide that the knife was "deadly or dangerous" in one of two independent ways: first, if it is "inherently or obviously dangerous or deadly;" and second, if it is capable of causing serious bodily injury or death and the defendant carried it with the intent that it be used in such a manner. *Id.* The parties agree that the defendant "need not have actually used the object in that manner." *Id.*

Unlike 40 U.S.C. § 5104(e)(1)(A), which is charged in Count Four of the Superseding Indictment and includes a definition of a "dangerous weapon," Congress did not provide a definition for what is a "deadly or dangerous weapon" for purposes of 18 U.S.C. § 1752(b)(1)(A). The definition agreed to by the parties was derived from an instruction given in *United States v. Robertson*, 2022 WL 2438546 (D.D.C. July 5, 2022), in a which a Capitol-riot defendant was charged with violations of 18 U.S.C. § 1752 (a)(1) and (a)(2) and (b)(1)(A) and was found guilty following a jury verdict. *See also United States v. Jensen*, No. 21-CR-6 (TJK) (ECF 97 at 36) (jury instructions). Because the instructions reserve this determination to the fact finder, no further definition of the terms "deadly or dangerous weapon" and "inherently or obviously dangerous or deadly" was given in either case.

2. <u>**Black's knife is "inherently or obviously dangerous or deadly."**</u>

As noted, section 1752 does not provide a definition of "deadly or dangerous weapon." Other statutes define "deadly and dangerous weapons" in various ways, including federal statutes

that give different and sometimes conflicting definitions. For example, under 40 U.S.C. § 5104(e)(1)(A)(i), "dangerous weapon" is defined to include "a knife having a blade over three inches in length;" on the other hand, under 18 U.S.C. § 930(g)(2), "dangerous weapon[s]" prohibited in Federal facilities include anything "readily capable of causing death or serious bodily injury, except that such term does not include a pocket knife with a blade of less than 2 ½ inches in length." But these statutes do not control here, because each context is different. In drafting Section 1752(b)(1)(A), Congress declined to provide more specificity.[1] Therefore, Black's suggestion that this Court should adopt the definition in Section 5104 is unsupported.

Similarly, the definition of "deadly or dangerous weapon" as that term is used in 18 U.S.C. § 111(b) is not controlling, and may not be particularly instructive here. That statute presents "a different context" because it "criminalizes 'forcibly assault[ing]' an officer and enhances the penalty for anyone who '*uses* a deadly or dangerous weapon. It does not address 'carrying' a dangerous weapon." *Robertson*, 2022 WL 2438546 at \*6 (emphasis in original) (internal citation omitted).[2]

---

[1] The court in *Robertson*, the only 1752(b)(1)(A) case the undersigned located discussing this issue, did not address whether the weapon involved in the offenses, a stick, was "inherently or obviously dangerous or deadly"—a theory that the government, given the facts of that case, did not advance. 2022 WL 2438546 at \*6-8. And in *United States v. Chansley*, 525 F. Supp. 3d 151, 162 (D.D.C. 2021), another January 6 case, the defendant, known as the "Q-Anon Shaman," carried a six-foot pole with a metal spearhead fixed to the top. The court found this "undoubtedly, a dangerous weapon. Like a knife, it is inherently dangerous. Both objects have a sharpened point designed to inflict harm by piercing or puncturing." But the court was interpreting the definition of "dangerous weapon" under the Bail Reform Act, not Section 1752. *Id.* at 161.

[2] Interpreting Section 111(b), courts focus on the defendant's use of the object, not solely on its inherent qualities, because the statute requires "use[] of a deadly or dangerous weapon" as one of its elements—unlike Section 1752(b)(1)(A). Under Section 111(b), courts have commonly held that "a deadly or dangerous weapon includes 'any object which, as used or attempted to be used, may endanger the life of or inflict great bodily harm on a person.' *United States v. Sanchez*, 914 F.2d 1355, 1358-59 (9th Cir. 1990) (collecting cases). "[T]he object's latent capability . . . coupled with the manner of its use, is determinative." *United States v. Loman*, 551 F.2d 164, 169 (7th Cir. 1977) (citation omitted)." *United States v. Bullock*, 970 F.3d 210, 215 (3d Cir. 2020).

Numerous courts have held or suggested that knives are inherently dangerous when defining "dangerous weapon" under another assault statute, 18 U.S.C. § 113(a)(3) (assaults within maritime and territorial jurisdiction), or otherwise called knives "inherently dangerous." The Ninth Circuit stated in *United States v. Smith*, 561 F.3d 934, 939 (9th Cir. 2009), "[i]nherently dangerous weapons, or "dangerous weapons per se,' are 'obviously dangerous' objects such as 'guns, knives, and the like.'" *Id.* (internal quotation marks omitted); *United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir. 1982) ("Thus, the term 'dangerous weapon' is not restricted to such obviously dangerous weapons as guns, knives, and the like, but can include virtually any object given appropriate circumstances."); *United States v. Johnstone*, 107 F.3d 200, 211 (3d Cir. 1997) ("a knife, an inherently dangerous weapon"); *United States v. Benson*, 918 F.2d 1, 2 (1st Cir. 1990) ("The district court found that the army knife was an inherently dangerous device"); *United States v. Swallow*, 891 F.3d 1203, 1204 (9th Cir. 2018) ("There are two types of instruments that qualify as dangerous weapons: those that are inherently dangerous (such as guns and knives)"); *United States v. Moore*, 846 F.2d 1163, 1166 (8th Cir. 1988) ("the object need not be inherently dangerous, or a 'weapon' by definition, such as a gun or a knife, to be found to be a dangerous and deadly weapon"); *United States v. Boyce*, 633 F.3d 708, 711 (8th Cir. 2011) ("the statute under which Boyce was convicted, applies only to the possession of inherently dangerous weapons such as guns or knives").

In *United States v. Vinton*, the defendant challenged the probable cause for charging him with a D.C. statute that prohibits carrying "any deadly or dangerous weapon" after police found a

---

Under section 111(b), almost anything can be a deadly or dangerous weapon if used in a violent fashion. *See, e.g.*, *United States v. Sanchez*, 914 F.2d 1355, 1359 (9th Cir. 1990) (citing cases involving "mop handle" and "mouth and teeth"); *United States v. Loman*, 551 F.2d 164, 169 (7th Cir. 1977) (citing cases involving "a wine bottle," "shoes," "a rake," and "a chair leg").

4

butterfly knife hidden in his car. 594 F.3d 14, 22 (D.C. Cir. 2010). D.C. case law defined "deadly or dangerous weapon" as "anything that is likely to produce death or great bodily injury by the use made of it." *Id.* (citations omitted). As here, that definition could be met in one of two ways: (1) the weapon is "'inherently dangerous,' i.e. where 'the design of the object is such that in its ordinary use is likely to cause great bodily injury'"; or (2) the weapon "ostensibly may be 'used as a tool in certain trades or hobbies or…may be carried for utilitarian reasons,' but where the 'surrounding circumstances indicate'" that the purpose was to use the object as a weapon. *Id.* (citations omitted). The court easily found that the butterfly knife in the defendant's possession satisfied the second prong, and therefore did little to explore whether the butterfly knife was "inherently dangerous." *Id.* Although the court noted that "one can imagine [butterfly knives] might be used for sport or entertainment," the holding in *Vinton* does not stand for the proposition that any item that might be used for sport or entertainment is therefore not "inherently dangerous." *Id.* In short, *Vinton's* finding that the butterfly knife was a dangerous weapon on the second prong does not mean that another case might not find that the same knife is "inherently dangerous." Items that might be used as tools for certain trades or hobbies—including knives—could also be "inherently dangerous." That is the case here.

> 3. **Black's knife is capable of causing serious bodily injury or death to another person and he carried it with the intent that it be used in a manner capable of causing serious bodily injury or death.**

Black's knife also qualifies as a "deadly or dangerous weapon" under the second prong because Black carried it with the intent that it would be used for self-defense.

> a. **The knife is capable of causing serious bodily injury or death to another person.**

Black's knife is capable of causing serious bodily injury or death to another person. Because of the knife's sharp edge, pointed tip, size, weight, and shape, its ability to injure or kill a

person through cutting or stabbing should be apparent merely from an inspection of the knife by the fact finder.  Beyond the danger apparent from the knife itself, the government also elicited testimony regarding the knife's ability to kill or injure. As Federal Bureau of Investigation Special Agent Jeffrey Weeks testified, the knife's cutting edge is sharp enough to cut through a piece of paper, a test Weeks normally uses to assess a knife's sharpness.

The knife is also pointed. Agent Weeks testified that he tested the sharpness of the tip of the knife on his fingertip and found it to be sharp. Ultimately, Agent Weeks testified that if the knife were used for stabbing, it would plunge into a body up to the "resistance point" at the beginning of the bolster before stopping.

### b. Black carried this knife with the intent to use this weapon "in a manner capable of causing serious bodily injury or death."

Black carried the knife at least in part as a measure of self-defense, indicating that he intended to use the knife in a manner capable of causing serious bodily injury or death.  According to the evidence at trial, Black had two stated purposes for carrying the knife.  As he told his YouTube audience, he carried a knife: (1) "'cause I do.  I work outside and you – you need knives"; and (2) "you're not allowed to carry guns in D.C. and I don't like being defenseless."  Black came to DC for just one day, to attend the Stop the Steal rally on the National Mall and eventually to march to the U.S. Capitol.  He left on January 7, 2021.  He had no outdoor work while he was here.  Black's admission that he carried a weapon for self-defense demonstrates his intent to use the weapon, if needed, *as a weapon*, and not simply as a tool for his outdoor work (which he was not performing during the relevant time period in any event).

An intent to use an object for self-defense satisfies the requirement that Black intended to use the weapon. "That he may have planned to use the knife only in self-defense or defense of another is irrelevant, so long as he intended to use it as a weapon." *Vinton*, 594 F.3d 14, 23, (D.C.

6

Cir. 2010); *see also United States v. Broadie*, 452 F.3d 875, 881 (D.C. Cir. 2006) ("the relevant inquiry is whether the surrounding circumstances provide probable cause to believe Broadie intended to use the ASP baton to cause great bodily injury, *whether in self-defense or otherwise*").

In Black's own mind, he carried the knife as a proxy for a firearm. He was unable to bring the guns he possessed in his home in Alabama to Washington D.C., so instead, he carried the knife for his self-defense purposes. A person's admission that he possessed weapons other than the knife at issue increases the likelihood that he intended to use the knife as a weapon. *See Vinton* at 23 ("Vinton's…allusion to possessing weapons at home increased the likelihood that he carried the butterfly knife for use as a weapon.").

Finally, Black's knowledge that he was wearing the knife throughout his journey to and through the Capitol—even after he was brought behind the "enemy lines" of the police barricades—suggests that he continued carrying the knife with the intent that it could be used in self-defense at the violent and unruly riot. The "surrounding circumstances indicate that the purpose of carrying the object is its use as a weapon." *Vinton*, 594 F.3d at 22 (quotation marks and citation omitted).

                                            Respectfully submitted,

                                            MATTHEW M. GRAVES
                                            United States Attorney
                                            District of Columbia Bar No. 481052


                                            */s/ Seth Adam Meinero*
                                            SETH ADAM MEINERO
                                            Trial Attorney (Detailee)
                                            District of Columbia Bar No. 967587

                                            */s/ Emily Allen*
                                            EMILY ALLEN
                                            Assistant United States Attorney
                                            California Bar No. 234961

                                            */s/ Eric Boylan*
                                            ERIC BOYLAN
                                            Assistant United States Attorney
                                            Texas Bar No. 24105519

                                            United States Attorney's Office
                                             for the District of Columbia
                                            United States Department of Justice

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on January 12, 2023, I served a copy of this pleading on all parties to this matter as indicated in the Court's electronic case files system.

                                      /s/ *Seth Adam Meinero*
                                      SETH ADAM MEINERO
                                      Trial Attorney (Detailee)